KATHERINE M. AIZPURU (*pro hac vice* application pending)
kaizpuru@ftc.gov
SAMUEL JACOBSON (*pro hac vice* application pending)
sjacobson@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Mail Stop: CC-10232
Washington, D.C. 20580
(202) 326-2870

[Additional counsel on signature block]

*Attorneys for Plaintiff*

```
F I L E D
CLERK, U.S. DISTRICT COURT
4/24/23
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DVE___ DEPUTY
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BCO CONSULTING SERVICES, INC., a California corporation, also d/b/a Students Loan Services LLC;<br><br>SLA CONSULTING SERVICES INC., a California corporation, f/k/a Student Loan Advocates LLC;<br><br>GIANNI OLILANG, individually and as an officer of BCO CONSULTING SERVICES, INC. and SLA CONSULTING SERVICES INC.;<br><br>BRANDON CLORES, individually and as an officer of BCO CONSULTING SERVICES, INC.;<br><br>KISHAN BHAKTA, individually and as an officer of BCO CONSULTING SERVICES, INC.; and<br><br>ALLAN RADAM, individually and as an officer of SLA CONSULTING SERVICES INC.,<br><br>　　Defendants. | Case No. 8:23-cv-00699-JWH (ADSx)<br>　　　　_____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and Section 522(a) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6822(a), which authorize the FTC to seek, and the Court to order, temporary, preliminary, and permanent injunctive relief, monetary relief, and other relief, including an asset freeze, appointment of a receiver, and immediate access to Defendants' business premises, for Defendants' acts or practices in violation of (1) Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (2) the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and (3) Section 521 of the GLB Act, 15 U.S.C. § 6821. Defendants' violations are in connection with their deceptive marketing and sale of student loan debt relief services.

## SUMMARY OF CASE

2. Defendants lure consumers, many of whom are low-income borrowers saddled with tens of thousands of dollars of student debt, into paying hundreds of dollars in exchange for false promises of loan forgiveness.

3. Defendants falsely tell borrowers that Defendants are affiliated with the federal government (or, specifically, the Department of Education); are administering government programs; and will purchase borrowers' debt from federal loan servicers in order to secure debt relief on their behalf. Defendants then collect hundreds of dollars in illegal up-front payments.

4. But Defendants' promises are false. Defendants do not seek or deliver loan forgiveness, loan repayment plans, or even a reduced loan balance. Consumers have paid significant sums to Defendants only to find that Defendants have not applied their payments to consumers' loan balances, sought or obtained forgiveness of their loans, or taken over servicing their loans. When consumers

realize they were duped and ask for a refund, Defendants often refuse to make them whole.

5. Through this action, the FTC seeks to put an end to Defendants' scheme and secure redress for the consumers whom Defendants have harmed.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and 15 U.S.C. § 53(b).

## PLAINTIFF

8. The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces the GLB Act, 15 U.S.C. §§ 6821-27, which prohibits any person from obtaining or attempting to obtain customer information of a financial institution relating to another person by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

## DEFENDANTS

9. **Defendant BCO Consulting Services, Inc. ("BCO"), also d/b/a Students Loan Services LLC**, is a California corporation that has a principal office listed at 151 N. Kramer Boulevard, Suite 100, Placentia, CA 92780. BCO has also used 151 N. Kramer Boulevard, Suite 100, Placentia, CA 92780 as its

business address in communications with customers. BCO transacts or has transacted business in this District and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, or as part of the common enterprise described in Paragraph 15, BCO has advertised, marketed, offered to provide, sold, or provided student loan debt relief services to consumers throughout the United States.

10. **Defendant SLA Consulting Services Inc. ("SLA") f/k/a Student Loan Advocates LLC** is a California corporation that has a principal office listed at 1665 E. 4th Street, Suite 208, Santa Ana, CA 92701. SLA has also used 1665 E. 4th Street, Suite 208, Santa Ana, CA 92701 as its business address in communications with customers. Student Loan Advocates LLC was incorporated in California and, in May 2021, converted to SLA. SLA transacts or has transacted business in this District and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, or as part of the common enterprise described in Paragraph 15, SLA has advertised, marketed, offered to provide, sold, or provided student loan debt relief services to consumers throughout the United States.

11. **Defendant Gianni Olilang** is an owner and officer of both BCO and SLA. He has been a signatory on the business bank accounts maintained by BCO and SLA, served as the customer contact for SLA's broadband agreement, and signed up for the websites studentloanadvocates.org and slaconsultingservices.org. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including the acts and practices of the common enterprise described in Paragraph 15. Defendant Olilang is a former owner and bank signatory for SL Finance LLC, a student loan debt relief company named as a defendant in the concurrently filed *Federal Trade Commission v. SL*

*Finance LLC, et al.* Defendant Olilang resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

12. **Defendant Brandon Clores** is an owner and officer of BCO. He has been a signatory on the business bank account maintained by BCO and applied for a Paycheck Protection Program loan on behalf of BCO. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including the acts and practices of the common enterprise described in Paragraph 15. Defendant Clores resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

13. **Defendant Kishan Bhakta** is an owner and officer of BCO. He has been a signatory on the business bank account maintained by BCO and served as the customer contact for BCO's broadband agreement. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including the acts and practices of the common enterprise described in Paragraph 15. Defendant Bhakta resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

14. **Defendant Allam Radam** is an owner and officer of SLA. He has been a signatory on the business bank account maintained by SLA and served as the customer contact for SLA's payroll services and utilities. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, including the acts and practices of the

common enterprise described in Paragraph 15. Defendant Radam resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

15. Defendants BCO and SLA (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. Corporate Defendants have conducted the business practices described below through interrelated companies that have common ownership and officers, and that commingled consumer funds. Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

16. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## BACKGROUND ON STUDENT LOAN FORGIVENESS AND REPAYMENT PROGRAMS

17. Student loan debt is the second largest class of consumer debt, with over 45 million borrowers owing approximately $1.75 trillion. Student loan debt is also one of the most distressed classes of debt: approximately $110.5 billion of student loans are in default.

18. The federal government administers several student loan forgiveness and discharge programs. These include income-driven repayment ("IDR") programs, which allow eligible borrowers to limit their monthly payments based on a percentage of their discretionary monthly income and offer forgiveness after a borrower has made payments for 20 or 25 years; and public service loan forgiveness ("PSLF"), which provides loan forgiveness to borrowers who make

payments for ten years while employed at qualifying government or nonprofit organizations. ED also administers other loan forgiveness programs for qualifying borrowers, including those who can establish a permanent and total disability; borrowers whose school closed while they were enrolled; and borrowers whose school violated certain state or federal laws, among others.

19. Consumers can apply for these and other programs through ED or their student loan servicers at no cost. These programs do not require the assistance of a third-party company or payment of application fees.

20. In addition to federal loan repayment and forgiveness programs, the original coronavirus relief bill, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), signed into law on March 27, 2020, temporarily paused payments and involuntary collections on federally held student loans through September 30, 2020. President Trump extended the pause until December 31, 2020, and President Biden has extended the pause into 2023. During the pause, payments are not due, collection activities (like wage garnishment and reduction of tax refunds) have been prohibited, and interest does not accrue on loan balances.

21. Months during the pause count toward the 120 payments required by PSLF (if the borrower works for a qualifying employer during the suspension plan) and also toward payments required to receive forgiveness under IDR plans.

22. In 2022, in addition to the above ongoing programs and COVID-19 payment pause, President Biden and ED created a one-time debt relief program for borrowers of federal student loans.

23. Several individuals and organizations filed legal challenges to the one-time debt relief program. As of this filing, the program is subject to injunctions blocking its implementation.

24. The student loan repayment pause is extended until ED is permitted to implement the program or until the litigation is resolved. If the program has not

been implemented and the litigation is not resolved by June 30, 2023, then payments will resume 60 days after that date.

## DEFENDANTS' STUDENT LOAN DEBT RELIEF SCAM

25. Defendants own and operate a student loan debt relief scam that preys on consumers burdened with student loan debt. Since at least August 2019, Defendants have collected hundreds of dollars per consumer from thousands of consumers—for a total of at least $6.5 million.

26. Defendants' scheme relies heavily on false and misleading representations made by Defendants' telemarketers to consumers, often made during an initial call between the telemarketer and a consumer.

27. In many instances, Defendants use telemarketers to make outbound telemarketing calls to consumers to offer their services and convince student loan borrowers to sign up with the company.

28. Defendants' telemarketers entice consumers to stay on the line with them by promising to alleviate the burdens of their student loans. Consumers have reported that Defendants' telemarketers sound official, and lead them to believe Defendants will deliver on their promises.

### Defendants' Misrepresentations to Consumers

29. To persuade consumers into signing up and paying for Defendants' purported student debt relief services, Defendants, through their telemarketers, make at least four types of deceptive claims:

    a) Consumers who pay for Defendants' program will be enrolled in a loan repayment program and have their loan balances forgiven in whole or in part;

    b) Most or all of consumers' monthly payments to Defendants will be applied to their loan balances;

    c) Defendants are contracted by, or otherwise affiliated with, ED;

and

d) Defendants will assume responsibility for the servicing of consumers' student loans.

30. **First,** Defendants have represented to numerous consumers that if consumers sign up for Defendants' debt relief program, Defendants will enroll them in a loan repayment program and secure forgiveness of their student loans.

31. Defendants frequently tell consumers that the repayment program will include a schedule of three-to-six monthly payments of between $200 and $300, sometimes followed by lower monthly payments for a period of months or years. All of these payments are to be made to Defendants.

32. Defendants in many instances tell consumers that their loans will be forgiven either directly upon payment of the initial installments, or after several months or years of making payments. Often, the quoted repayment program is substantially shorter than the ten- or twenty-year programs offered by the federal government—sometimes only a few months.

33. These representations are false. In many instances, Defendants do not even apply for—much less obtain—legitimate federal repayment plans, such as income-driven repayment plans, or student loan forgiveness on behalf of the consumers who pay for Defendants' services.

34. Numerous consumers have reported that Defendants did not apply for income-driven repayment programs, public service loan forgiveness, or other forms of loan forgiveness and repayment plans on their behalf, even though they provided information about their income and employment and made payments to Defendants.

35. **Second,** Defendants often tell consumers the payments will be applied to reduce their loan balance.

36. In fact, Defendants in numerous instances take the money for

themselves and do not make payments to consumers' student loans on their behalf. Many consumers have reported that Defendants did not apply any of their payments to their student loans and that their balances did not decrease after making payments to Defendants.

37. Because borrowers of federal student loans have not been required to make payments on their student loans since March 2020, federal student loan servicers are not expecting to receive monthly payments and are not likely to contact consumers if payments are not received. Defendants have taken advantage of the lull in borrower-servicer communications to deceive borrowers into paying them instead of making payments on their student loans or saving that money for other purposes.

38. **Third,** Defendants frequently tell consumers that they "work" or are "affiliated" with the federal government or, specifically, ED.

39. But Defendants are not affiliated with ED and do not hold contracts with ED.

40. **Fourth,** Defendants have represented to numerous consumers that they will be purchasing, taking over, or handling servicing of consumers' loans.

41. Defendants are not federal loan servicers and despite their representations to consumers, have not taken over or purchased consumers' student loans. Instead Defendants insert themselves between borrowers and their servicers, and have instructed consumers to ignore their current servicers while participating in Defendants' program.

**Defendants' Use of False, Fictitious, and Fraudulent Statements to Obtain Consumers' Customer Information of a Financial Institution**

42. Defendants use the statements set forth in Paragraph 29 to deceive consumers into signing up for Defendants' services and handing over their sensitive and personal financial information.

43. Defendants have used the statements listed in Paragraph 29 to cause consumers to provide Defendants with their bank account numbers, debit card numbers, and credit card numbers.

### Defendants' Collection of Illegal Advance Fees

44. Once in possession of consumers' private and sensitive financial information, Defendants typically collect or attempt to collect approximately three-to-six "initial" monthly payments of between approximately $200 to $300, sometimes followed by monthly payments in a lower amount.

45. Defendants have collected or attempted to collect hundreds of dollars for their "services" per consumer. Defendants mislead consumers into believing the majority of these payments are going towards paying off their student loan debt or otherwise securing loan forgiveness.

46. In fact, Defendants are in numerous instances simply taking the money without delivering promised services. Many consumers have reported that Defendants have not sought or obtained repayment plans or student loan forgiveness for consumers who pay for Defendants' services. Thus, in many instances, Defendants continued to receive fees from consumers despite never renegotiating, settling, reducing, or otherwise altering the terms of the consumers' debt.

47. During the federal COVID-19 student loan repayment pause, consumers have not been required to make payments on their federal loans at all. Consumers have paid more to Defendants during the pause than they would have been required to pay toward their student loan balances.

48. In many instances, Defendants have refused or ignored requests by consumers for refunds.

### Ongoing Conduct

49. Based on the facts and violations of law alleged in this Complaint, the

FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

50. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

51. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I
### Deceptive Representations

52. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defendants represent, directly or indirectly, expressly or by implication, that:

    a) Consumers who pay for Defendants' program will be enrolled in a loan repayment program and will have their loan balances forgiven in whole or in part;

    b) Most or all of consumers' monthly payments to Defendants will be applied to their loan balances;

    c) Defendants are affiliated with or contracted by the federal government or, specifically, ED; and

    d) Defendants will assume responsibility for the servicing of consumers' student loans.

53. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 52, such representations were false or unsubstantiated at the time Defendants made them.

54. Therefore, Defendants' representations as set forth in Paragraph 52 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

# THE TELEMARKETING SALES RULE

55. In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101–6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter.

56. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd). A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff). "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

57. Defendants are sellers or telemarketers of "debt relief services" as defined by the TSR, 16 C.F.R. § 310.2(o). Under the TSR, a "debt relief service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector. 16 C.F.R. § 310.2(o).

58. The TSR prohibits sellers and telemarketers from requesting or receiving payment of any fees or consideration for any debt relief service unless and until:

    a) The seller or telemarketer has renegotiated, settled, reduced, or

otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

b) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and creditor; and

c) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(1) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and entire debt amount are those owed at the time the debt was enrolled in the service; or

(2) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt. 16 C.F.R. § 310.4(a)(5)(i).

59. The TSR prohibits sellers and telemarketers from misrepresenting directly or by implication any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service. 16 C.F.R. § 310.3(a)(2)(x). Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and

Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE TELEMARKETING SALES RULE**
**Count II**
**Advance Fee for Debt Relief Services**

60. In numerous instances, Defendants have, in connection with the telemarketing of student loan debt relief services, requested or received payment of a fee or consideration for debt relief services before:

    a) Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

    b) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor.

61. Therefore, Defendants' acts or practices as set forth in Paragraph 60 violate the TSR, 16 C.F.R. § 310.4(a)(5)(i).

**Count III**
**Material Debt Relief Misrepresentation**

62. In numerous instances, Defendants have, in connection with the telemarketing of student loan debt relief services, misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including, but not limited to, that:

    a) Consumers who pay for Defendants' program will be enrolled in a loan repayment program and will have their loan balances forgiven in whole or in part;

    b) Most or all of consumers' monthly payments to Defendants will

        be applied to their loan balances;

        c)    Defendants are affiliated with or contracted by the federal government or, specifically, ED; and

        d)    Defendants will assume responsibility for the servicing of consumers' student loans.

63.    Therefore, Defendants' acts or practices as set forth in Paragraph 62 violate the TSR, 16 C.F.R. § 310.3(a)(2)(x).

## THE GRAMM-LEACH-BLILEY ACT

64.    Section 521 of the GLB Act, 15 U.S.C. § 6821, became effective on November 12, 1999, and remains in full force and effect. Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

65.    The GLB Act defines "customer" to mean "with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary." 15 U.S.C. § 6827(1). The GLB Act defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of a financial institution and is identified with the customer." 15 U.S.C. § 6827(2).

66.    Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance with such Act."

67.    Section 814(a) of the FDCPA, in turn, makes a violation of the

FDCPA an unfair or deceptive act or practice in violation of the FTC Act. 15 U.S.C. § 1692l(a). Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the power to enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule.

68. Thus, pursuant to Section 522(a) of the GLB Act, the FTC may enforce Section 521 of the GLB Act in the same manner as if a violation of the GLB Act were a violation of an FTC trade regulation rule.

69. Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from violations of FTC trade regulation rules. Accordingly, Section 19 of the FTC Act, 15 U.S.C. § 57b, also authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from violations of the GLB Act. This relief may include, and is not limited to, recission or reformation of contracts, and the refund of money or return of property.

### Count IV
**Use of False, Fictitious, or Fraudulent Statements to Obtain or Attempt to Obtain Customers' Customer Information of a Financial Institution**

70. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defendants have made false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain those customers' customer information of a financial institution. The customer information of a financial institution that Defendants obtain or attempt to obtain includes bank account numbers, debit card numbers, and credit card numbers.

71. Defendants obtain or attempt to obtain the the customer information

of a financial institution by representing to customers of financial institutions, directly or indirectly, expressly or by implication, that consumers who pay for Defendants' program will be enrolled in a loan repayment program and have their loan balances forgiven in whole or in part; most or all of their payments will be applied to their loan balances; Defendants are affiliated with or contracted by the federal government or, specifically, ED; and Defendants will assume responsibility for the servicing of consumers' student loans.

72. Defendants' representations set forth in Paragraph 71 above are false, fictitious, or fraudulent within the meaning of Section 521 of the GLB Act.

73. Therefore, Defendants' acts and practices set forth in Paragraphs 70 to 72 above violate Section 521 of the GLB Act, 15 U.S.C. § 6821.

## **CONSUMER INJURY**

74. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, and the GLB Act. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the GLB Act;

B. Grant preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including temporary and preliminary injunctions, an order freezing assets, immediate access to Defendants' premises, and appointment of a receiver;

C. Award monetary and other relief within the Court's power to grant, including the rescission or reformation of contracts, the refund of money, public

notification, or other relief necessary to redress injury to consumers; and

      D.    Award any additional relief as the Court determines to be just and proper.

Dated: April 24, 2023

Respectfully submitted,

/s/ Katherine M. Aizpuru
KATHERINE M. AIZPURU
(*pro hac vice* application pending)
kaizpuru@ftc.gov
202-876-5673
SAMUEL JACOBSON
(*pro hac vice* application pending)
sjacobson@ftc.gov
202-876-5590
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Mail Stop: CC-6316
Washington, D.C. 20580

JOHN D. JACOBS, Cal. Bar No. 134154
*Local Counsel*
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4343
(310) 824-4380 (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION